**Juan Manuel MORALES,**
**Plaintiff–Appellant,**

v.

**CITY OF SAN RAFAEL and Daniel**
**Hulett, Defendants–Appellees.**

**No. 94–15523.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 6, 1996.*

Decided Sept. 6, 1996.

* The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34–4.

Peter B. Brekhus, Linda J. Philipps, Brekhus, Williams, Wester & Hall, Greenbrae, CA, for plaintiff-appellant.

Gregory M. Fox, Dana L. Soong, Bertrand, Fox, & Elliot, San Francisco, CA, for defendants-appellees.

Before D.W. NELSON, REINHARDT and KLEINFELD, Circuit Judges.

REINHARDT, Circuit Judge:

This case involves a dispute as to the proper method of determining a reasonable attorney's fee for a prevailing civil rights plaintiff. The history of the case is as follows:

Morales sued the City of San Rafael ("City") and a San Rafael police officer, Sergeant Daniel Hulett, alleging that Hulett unlawfully arrested Morales without an arrest warrant and without probable cause in violation of 42 U.S.C. § 1983 and state law. Based upon *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the district court dismissed Morales' § 1983 claim against the City and granted summary judgment as to that claim in the City's favor. The City remained a defendant with respect to Morales' state law claims. At trial, the jury returned a special verdict in Morales' favor and awarded $17,500 in damages.

Hulett and the City moved to set aside the verdict. The district court granted the motion and entered a JNOV. Morales appealed and this court found that substantial evidence supported the jury's verdict and reinstated the verdict in a memorandum disposition. We remanded for entry of judgment in favor of Morales on the jury's verdict and for determination of Morales' claim for attorney's fees for work performed in the district court.

Morales moved the district court for an award of fees in the amount of $139,783.25,[1] and the district court conducted a hearing at which the defendants suggested $50,000 as a reasonable fee to be awarded the plaintiff. The district court requested additional briefing as to what amount would constitute a reasonable fee. In their subsequent brief, the defendants suggested three different methods of determining a reasonable fee award, only one of which required calculating a lodestar figure, producing three different suggested reasonable fees: $7,000 or $14,974.73, or between $25,000 and $50,000.

Relying on *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the district court concluded that Morales should be awarded "low" attorney's fees and that *Farrar* gave it the authority to set a "low" fee award without calculating a lodestar figure and without reciting the twelve factors that bear on the reasonableness of a fee award. Having engaged in no mathematical calculation and offering very little explanation of how it decided on a monetary figure, the district court awarded Morales $20,000 in attorney's fees, just forty percent of what the *defendants* originally suggested.

In addition to attorney's fees, the district court held that Morales was entitled to recover costs in the amount of $8,119.16 from Hulett and that the City was entitled to recover costs in the amount of $2,708.04 from Morales. The district court justified its imposition of costs against Morales on the grounds that Morales prevailed only against Hulett and only on the § 1983 claim and that "[i]t follows that City of San Rafael has prevailed fully against Morales."

Morales now appeals his attorney's fee award and the imposition of costs against him.

## ANALYSIS

### I.

■ The district court misinterpreted this court's memorandum disposition when it concluded that we "revived the verdict only as to the 42 U.S.C. § 1983 claim." Accordingly, it improperly concluded that the City was a prevailing party deserving of costs.

On remand, the district court awarded costs to the City based on its conclusion that the City had prevailed "fully" against Morales. However, the City prevailed only as to Morales' § 1983 claim against it and remained a party to the action after summary judgment was granted in its favor on that claim. The jury verdict reinstated by this court was rendered in favor of Morales on his state law claims against the City.

Nowhere in our memorandum disposition do we state that only part of the jury's verdict should be reinstated. To the contrary, we reversed the district court's order granting JNOV and remanded the case for entry of judgment in favor of Morales consistent with the jury's verdict. The last paragraph of our order reads as follows:

Substantial evidence supported the jury's verdict; the district court erred in granting JNOV. We reverse and remand. On remand, the district court shall enter judgment in favor of Morales on the jury's

---

1. Morales arrived at this figure by calculating a lodestar figure-multiplying the hourly rates of the attorneys who worked on the case by the number of hours they each expended-and then reducing that figure by the time expended on the unsuccessful *Monell* claim, 173.2 hours at $30,380.

| Attorney | Hourly Rate | Number of Hours |
|---|---|---|
| Peter B. Brekhus | $255 | 266.25 |
| Barry F. Wester | $175 | 81.4 |
| Matthew Brekhus | $155 | 151.3 |
| Linda J. Philipps | $155 | 413.6 |
| Kirk E. Wallace | $135 | 25.4 |

Morales' motion included extensive and detailed explanations as to why the lodestar figure of $134,759.75 was a reasonable fee in this case. The final figure of $139,783.25 includes Morales' calculation of $5,023.50 in fees for attorney time expended in district court after the motion for fees was filed.

verdict and proceed to determine Morales' request for attorney's fees.

The City obviously understood that our reinstatement of the jury's verdict made it the losing party as to the state law claims against it, as evidenced by the fact that it filed a petition for rehearing on its own behalf, as well as on behalf of Hulett, and referred throughout the petition both to "the CITY and HULETT." Because the City was not a prevailing party eligible for costs under Federal Rule of Civil Procedure 54(d)(1), the district court erred in awarding it costs.[2]

## II.

■ We review an award of attorney's fees for an abuse of discretion. *Corder v. Brown*, 25 F.3d 833, 836 (9th Cir.1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). "Any elements of legal analysis which figure in the district court's decision are, however, subject to de novo review." *Corder*, 25 F.3d at 836. Thus, we will overturn a district court's fee award if it is based on an inaccurate view of the law. *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir.1991).

■ Here, in determining the fee award, the district court relied on *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), a case in which the Supreme Court considered the issue "whether a civil rights plaintiff who receives a nominal damages award is a 'prevailing party' eligible to receive attorney's fees under 42 U.S.C. § 1988," *id.* at 105, 113 S.Ct. at 570. The district court read *Farrar* as standing for the proposition that "zero or low attorney's fees" should generally be awarded to § 1983 plaintiffs who receive damages awards that constitute a relatively small portion of the damages they seek. Instead of following the practice courts are generally required to follow when

calculating attorney's fees in civil rights cases—i.e. computing a lodestar figure and then, if necessary, making adjustments to that figure based upon reasonableness factors—the district court basically "reasoned" to what it thought was an appropriate fee in light of the fact that Morales received only $17,500 in compensatory damages. Seemingly trying to avoid a figure "too much more" than the damages award, the district court awarded Morales $20,000 for attorney's fees.

The district court erred in its application of *Farrar* in this case. At the most general level, *Farrar* stands for the uncontroversial principle that "[i]t is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the 'extent of success' and the amount of the fee award." *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir.1994) (quoting *Farrar*, 506 U.S. at 115–16, 113 S.Ct. at 575).[3] That overall rule, requiring that the district court take into account the results obtained in the action, applies in all § 1988 cases as was properly recognized by the district court in this case. *Id.* See also *Corder v. Brown*, 25 F.3d 833, 836–837 (9th Cir.1994); *Harris v. Marhoefer*, 24 F.3d 16, 18–19 (9th Cir.1994).

■ However, *Farrar* also stands for a more limited proposition, and it is in the application of this narrow second ruling that the district court erred in this case. In *Farrar*, the Supreme Court created an exception to the general rule governing a district court's calculation of attorneys' fees. The Court held that "nominal damages" cases in which the relief is *de minimis* are exempted from the general requirements that govern the calculation of attorney's fees, including the requirement that a lodestar first be calculated. 506 U.S. at 116–18, 113 S.Ct. at 576 (O'Connor, J., concurring).[4] The

---

**2.** We do not intend to criticize the district court in this respect and recognize that its error on remand may have resulted at least in part from the fact that our memorandum disposition was not as clear as it might have been.

**3.** In *McGinnis* we held that the district court erred when it expressly refused to consider the amount of actual damages in determining the extent of the plaintiff's success. *Id.* at 810 (hold-

ing that district court erred in deciding that it would not reconsider its attorney's fee award if the plaintiff's damages award were reduced from $234,000 to $34,000).

**4.** Justice O'Connor concurred in the majority opinion written by Justice Thomas, supplying the necessary fifth vote, but then wrote separately to explain "more fully" her view of the majority's holding. *See infra* note 7.

*Farrar* exception, which would allow the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is limited to cases in which the civil rights plaintiff "prevailed" but received only nominal damages and achieved only "technical" success. *Id.*

Morales' damages award of $17,500 in compensatory damages, while substantially less than what he sought,[5] was not nominal.[6] Because the *Farrar* exception is inapplicable to cases in which the damages are not nominal, the district court erred in invoking it here.

■ In addition, even if Morales' damages award were nominal, the *Farrar* exception would not be applicable here. Whether the plaintiff's "success is purely technical or *de minimis*," *id.* at 117, 113 S.Ct. at 576 (O'Connor, J., concurring), is determined by examining other factors in addition to the amount of money damages awarded. Primary among such other considerations is "the significance of the legal issues on which the plaintiff claims to have prevailed" and the "public purpose" the plaintiff's litigation served. *Id.* In her concurring opinion, Justice O'Connor makes it clear that not all nominal damages awards are de minimis. *Farrar*, 506 U.S. at 121, 113 S.Ct. at 578 ("Nominal relief does not necessarily a nominal victory make."). Moreover, her opinion emphasizes that, although "a substantial difference between the judgment recovered and the recovery sought" may suggest that the plaintiff's victory is purely technical, "[t]he difference between the amount recovered and the damages sought is not the only consideration." *Id.* "An award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved." *Id.* As we explain later, Morales achieved a significant nonmonetary result not only for himself but for the community in general.[7]

### III.

■ The customary method of determining fees, which the district court should have used here, is known as the lodestar method. "The lodestar determination has emerged as the predominate element of the analysis" in determining a reasonable attorney's fee award. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987). The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995). After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors[8]

5. Morales' counsel asked the jury to award between $150,000 and $250,000.

6. Morales' award is in stark contrast to the "one seventeen millionth" Farrar received. *Id.*, at 121, 113 S.Ct. at 578. (Farrar sought $17 million in damages, but received an award of $1.) While *Farrar* does not *prohibit* fee awards for plaintiffs who receive nominal damages, *Wilcox v. Reno*, 42 F.3d 550, 555, 556 (9th Cir.1994), it is readily apparent from considering those damages awards this court has deemed "nominal" that Morales did not receive nominal damages. *See, e.g., Romberg v. Nichols*, 48 F.3d 453, 454 (9th Cir.1995) (each plaintiff awarded one dollar after seeking $2 million in general punitive damages), *cert. denied,* —— U.S. ——, 116 S.Ct. 379, 133 L.Ed.2d 303 (1995); *Wilcox*, 42 F.3d at 554 (plaintiff obtained judgment of one dollar); *Forrester v. San Diego*, 25 F.3d 804, 809 (9th Cir.1994) (plaintiffs did not procure relief), *cert. denied,* —— U.S. ——, 115 S.Ct. 1104, 130 L.Ed.2d 1070 (1995); *Wilks v. Reyes*, 5 F.3d 412, 417 (9th Cir.1993) (plaintiff awarded one dollar in nominal damages).

7. The analysis outlined above parallels the approach adopted by at least two other circuits which have addressed the same issue. For example, the Seventh Circuit has expressly adopted a three-part test, derived directly from Justice O'Connor's *Farrar* concurrence, for determining "whether a prevailing party has achieved a mere technical victory inappropriate for fees." *Johnson v. Lafayette Fire Fighters Ass'n Loc. 472*, 51 F.3d 726 (7th Cir.1995) (citing *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir.1993)). *See also Jones v. Lockhart*, 29 F.3d 422, 423–424 (8th Cir.1994); *A.J. by L.B. v. Kierst*, 56 F.3d 849, 863 (8th Cir.1995); *Milton v. Des Moines, Iowa*, 47 F.3d 944, 946 (8th Cir.1995).

8. The twelve *Kerr* factors bearing on the reasonableness are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee

that are not already subsumed in the initial lodestar calculation.[9] *Id.; Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). That is the procedure the district court was required to follow here.[10]

If the district court had employed the proper method of determining what constitutes a reasonable attorney's fee award and had calculated a lodestar figure, it would have been required to consider the amount of damages Morales was awarded in assessing the overall results obtained from the litigation. The district court was not only free but obligated to consider "the results obtained" by Morales, or "the extent of [his] success," *Hensley v. Eckerhart*, 461 U.S. 424, 436, 440, 103 S.Ct. 1933, 1942, 1943, 76 L.Ed.2d 40 (1983) in calculating the lodestar figure. *McGinnis*, 51 F.3d at 810 (stating that the number of hours used to calculate the lode-

star figure must be "reasonable in relation to the success achieved."). See also *Farrar*, 506 U.S. at 114–16, 113 S.Ct. at 575.

However, the amount of damages recovered by Morales is not the sole indicator of the extent of his success. *See Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion) ("[A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."); *Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir.1988).[11] Morales' nonmonetary success was significant. The jury held both the City and the officer involved responsible for his unlawful arrest. Because it assessed damages against the defendants, the verdict established a deterrent to the City, its law enforcement officials and others who establish and implement official policies governing arrests of citizens. Thus, it served the public purpose of helping to protect Mor-

is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.
*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

There is a strong presumption that the lodestar figure represents a reasonable fee. "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (1994); *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir.1992). Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law. *Cunningham*, 879 F.2d at 487.

9. Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, ... (4) the results obtained," *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir.1988), *reinstated*, 886 F.2d 235 (1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990), and (5) the contingent nature of the fee agreement, *City of Burlington v. Dague*, 505 U.S. 557, 565–67, 112 S.Ct. 2638, 2643, 120 L.Ed.2d 449 (1992).

Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the rea-

sonable number of hours or reasonable hourly rate at the first step, i.e. when determining the lodestar, is a disfavored procedure. *Corder v. Gates*, 947 F.2d at 378. However, as long as the district court only makes one adjustment per factor, either before or after the lodestar calculation, we have found such an error to be harmless. *Id.; Cabrales*, 864 F.2d at 1465.

10. The district court was correct that it need not "recite" the twelve *Kerr* factors, *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 809 (9th Cir.1994). The requirement is simply that it consider those factors not already subsumed in the lodestar figure.

11. The plurality opinion in *Riverside* expressly "reject[ed] the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Id.* at 574, 106 S.Ct. at 2694 (affirming award of $245,456.25 in attorney's fees in civil rights litigation in which plaintiff prevailed against the city and police officers receiving $13,300 in damages). Likewise, we have repeatedly made it clear that the level of success achieved by a civil rights plaintiff should be measured by more than the amount of damages awarded. *Larez v. Holcomb*, 16 F.3d 1513, 1523 (9th Cir.1994) (holding that possible reduction of damages award on remand "should not necessarily" lead the district court to reduce the attorney's fee award); *Quesada*, 850 F.2d 537, 539 (9th Cir.1988) (holding that "court should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested").

ales and persons like him from being subjected to similar unlawful treatment in the future. For this reason, the district court made an explicit finding in its fee-setting order that Morales' litigation served a significant public policy interest, stating that the verdict "constitutes a warning to law-enforcement officers not to treat civilians unconstitutionally." Thus, in determining a reasonable fee award on remand, the district court should consider not only the monetary results but also the significant nonmonetary results Morales achieved for himself[12] and other members of society.

## CONCLUSION

■ The *Farrar* exception to the general rule requiring the district court to calculate the lodestar figure to determine an attorney's fee applies only to nominal damages cases in which the plaintiff's success is *de minimis*. Success is measured not only by the amount of the recovery but also in terms of the significance of the legal issue on which the plaintiff prevailed and the public purpose the litigation served. Because the monetary award was not nominal and because Morales' success was not minimal, this case does not fit within the *Farrar* exception. We vacate the attorney's fee award and remand for a new fee determination to be made in the manner explained in Section III.

We vacate the award of costs to the City because the City was not a prevailing party eligible for costs, and conclude that, to the contrary, the City is liable to Morales for costs.

REVERSED AND REMANDED.

KLEINFELD, Circuit Judge, dissenting.

I respectfully dissent with regard to the attorney's fees award. A lawyer's fee of $139,783.25 for getting a client $17,500 is obscene. The district court properly determined that the amount was inappropriate

under controlling law and cut the fee to $20,000. We should affirm that discretionary determination.

The majority purports to limit *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), to nominal damages cases. *Farrar* applies to all 42 U.S.C. § 1988 cases. We have already established that interpretation of *Farrar*, and it is inescapable in the context of the line of Supreme Court decisions of which *Farrar* is a part. The district court applied *Farrar* correctly and exercised discretion appropriately:

> The aforementioned $17,500 compensatory damages: (a) is only a small portion of the damages that were sought by Morales; (b) is unaccompanied by punitive damages, declaratory relief, or injunctive relief; but (c) constitutes a warning to law-enforcement officers not to treat civilians unconstitutionally. Thus, the amount of attorney's fees awarded to Morales should be moderately, but not extremely, low. And $20,000—a figure somewhat, but not too much, more than $15,000 [the suggested fee in defendants' supplemental brief]— is the most appropriate amount for an attorney's fee award to Morales.

That exercise of discretion was in accord with controlling law.

*Farrar* considered whether a civil rights plaintiff who receives only a nominal damages award is a prevailing party. The Fifth Circuit had held that plaintiffs who win only $1 are not prevailing parties, so attorneys' fees cannot be awarded under Section 1988. *Farrar*, 506 U.S. at 107–09, 113 S.Ct. at 571. The Supreme Court affirmed the denial of fees, but on a different theory. The Court held that such a plaintiff *is* a prevailing party, but that attorneys' fees awarded to prevailing parties under § 1988 must reflect the "degree of success obtained." *Id.*, at 114, 113 S.Ct. at 574.

---

**12.** The district court should, as we stated in *McGinnis*, consider what Morales' attorney did for his "actual client." *Id.* at 810. However, the assessment of the "results obtained" by the actual client in a civil rights action should not be limited to the damages award that person received but also requires consideration of the non-

monetary benefits the plaintiff personally gains from the lawsuit. Moreover, as *McGinnis* makes clear, the benefit received by the client is only "*an* important measure of 'extent of success,'" and must be considered along with "the benefits [conferred] on others throughout society by winning a civil rights claim." *Id.* (emphasis added).

I am mystified by the majority's insistence upon interpreting only Justice O'Connor's concurring opinion in *Farrar*, and neither quoting from nor applying the reasoning of the opinion of the Court. Justice Thomas wrote the opinion of the Court in *Farrar*, joined by Chief Justice Rehnquist, Justice O'Connor, Justice Scalia, and Justice Kennedy. Five is a majority. Justice O'Connor expressly wrote "I join in the Court's opinion." *Id.*, at 116, 113 S.Ct. at 575. Justice Thomas's opinion said that "the only reasonable fee is *usually* no fee at all." *Id.* (emphasis added). Justice O'Connor did not suggest that the opinion should be limited to nominal damages cases. Rather, she took the position that *"no fees* can be awarded" where the plaintiff's victory is "purely technical or *de minimis*," but not all nominal damages cases are mere technical victories. *Id.*, at 117, 120–22, 113 S.Ct. at 576, 578 (emphasis added).

The reasoning of *Farrar* compels the conclusion that it applies generally to section 1988 cases, not just to nominal damages cases. *Farrar* holds that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.*, at 114, 113 S.Ct. at 574 (quotations omitted). *Farrar* applied the rule in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that using the product of hours times rate as the award may be excessive in cases of "partial or limited success." *Farrar, 506 U.S. at 114,* 113 S.Ct. at 574. *Hensley* had held, in an injunctive relief (not damages) case, that the "lodestar" fee may be excessive in cases of partial or limited success, and in such cases, "the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. *Farrar* made it clear that this rule applied to damages cases as well as injunctive relief cases, and that in a nominal damages case, the fee "reasonable in relation to the results obtained" was usually nothing.

The Supreme Court in *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) affirmed an award of attorneys' fees exceeding the amount of damages recovered by the plaintiff. A plurality, but not a majority, of the Court rejected the proposition that section 1988 fees must necessarily be no higher than the damages award, or no higher than the one third contingent fee commonly used in personal injury litigation. *Id.* at 574, 106 S.Ct. at 2694. The plurality conceded that "the rates charged in private representations may afford relevant comparisons." *Id.* at 578 n. 9, 106 S.Ct. at 2696 n. 9. The plurality decision rejected the proposition that fee awards "should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers," on the theory that "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Id.* at 574, 106 S.Ct. at 2694. The plurality considered that a strict rule limiting fee awards to monetary damages fails to reflect the important social benefits secured by a successful civil rights plaintiff. *Id.*

Justice Powell, the fifth vote to affirm in *Riverside,* "join[ed] only the Court's judgment." *Id.* at 581, 106 S.Ct. at 2697. He did not join in the plurality opinion. He thought that the "fee award seems unreasonable," and that it would be a "rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Id.* at 586 n. 3, 106 S.Ct. at 2700 n. 3. He affirmed only because the detailed findings supporting the award were not clearly erroneous, that is, because the standard of review did not permit him to substitute his judgment for that of the district judge.

Putting these three cases together, the law is plain: while section 1988 fees are not necessarily held to a ceiling of the damages award or the one third contingent fee common in personal injury cases, the fee award has to be reasonable in relation to the results obtained, including societal benefits, and a limited success requires that a fee be limited by reasonableness in relation to the results obtained, even where the "lodestar" amount is much higher.

The majority opinion errs by requiring the district court to begin by making a lodestar calculation, and then to assess whether any

adjustment should be made to it. *Farrar* says just the opposite. The "critical factor" of "degree of success" trumps the old *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975), twelve factors approach to adjusting the "lodestar" of hourly rate times hours spent. *Farrar* teaches that the district judge neither has to mention the twelve factors, nor even multiply hours times rate. "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees *without reciting* the 12 factors bearing on reasonableness *or multiplying* the number of hours reasonably expended ... by a reasonable hourly rate." *Farrar*, 506 U.S. at 117, 113 S.Ct. at 575 (emphasis added) (citation and quotations omitted). Thus, the district judge need not start by multiplying hours spent times hourly rate, and then adjust it by the old twelve factors and extent of success, in a limited success case.[1] Instead, the judge can start by considering "the amount and nature of damages awarded."

Our own decisions leave no room for the majority to adopt its different analysis of *Farrar* today. We have already rejected the majority's limitation of *Farrar* to nominal damages cases, and we can reject our earlier decisions only by *en banc* review. *United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995).

In *Corder v. Brown*, 25 F.3d 833 (9th Cir.1994), where the damages award was $24,006 (not nominal), we held that under *Farrar*, full attorney's fees based on multiplication of hours times rate would be unreasonable. We required the district court on remand to recalculate the fee award giving primary consideration to the fact that "the amount of damages awarded as compared to the amount of damages sought is minimal," for which we cited *Farrar*. *Corder*, 25 F.3d at 837. Thus we applied *Farrar* to a case other than a nominal damages case.

In *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir.1994), we followed *Corder* in another case of a moderate (not nominal) award, $25,000, and required reduction of the lodestar amount because of limited success.

We carefully considered how *Farrar* applied to a $34,000 award (not nominal) in *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805 (9th Cir.1994). We construed *Farrar* to mean that "it is an abuse of discretion for the district court to award attorney's fees without considering the relationship between the extent of success and the amount of the fee award." *Id.* at 810. Because the district court expressly refused to relate the extent of success to the amount of the fee award and refused to reduce the attorney's fee award "so that it is commensurate with the extent of the plaintiff's success," *id.* at 810, we reversed. In *McGinnis*, plaintiff's attorney had obtained a disappointingly low compensatory damages award, considering Mr. McGinnis's suffering, but a high punitive damages award. The punitive damages award had to be disallowed as a matter of law, so the plaintiff's success was limited. We noted that "no reasonable person would pay lawyers $148,000 [the fee sought] to win $34,000 [the damages obtained]." *Id.* at 810. Although the attorneys' fees award could exceed what a reasonable individual would pay a lawyer for the private benefit, because of the public benefit associated with the plaintiff's victory, the public benefit "is not infinite," and "[w]hat the lawyers do for their actual client is an important measure of 'extent of success.'" *Id.* We held that the district court "must reduce the attorneys' fees award so that it is commensurate with the extent of the plaintiff's success." *Id.*

After *Corder*, *Harris*, and *McGinnis*, it is impossible, without rehearing *en banc*, for us to construe *Farrar* to apply only to nominal damages cases.[2] Even if our own circuit

---

1. The majority mistakenly relies on *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987), for the proposition the lodestar determination is the "predomina[nt] element" of a fee award. We decided *Jordan* in 1987, but the Supreme Court decided *Farrar* in 1992, so *Farrar* controls. *Farrar* holds that " 'the most critical factor' in determining the reasonableness of a fee

award 'is the degree of success obtained.' " *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574.

2. We say in *Stivers v. Pierce*, 71 F.3d 732, 753 (9th Cir.1995), that "*Farrar* holds that a prevailing party may be denied fees where he obtains only a narrow, technical victory such as nominal damages." *Stivers* was a § 1983 case for an

authority did not bind us to a broader reading, the Supreme Court's reasoning in the majority opinion in *Farrar*, and in *Hensley*, would leave no room for the majority's interpretation. "Where the relief sought and obtained is limited to money, the terms 'extent of success' and 'level of success' are euphemistic ways of referring to money." *McGinnis*, 51 F.3d at 810. In a limited success case, the district court may begin by considering "the amount and nature of damages awarded," and award fees commensurate with the extent of success "without . . . multiplying the number of hours reasonably expended . . . by a reasonable hourly rate." *Farrar*, 506 U.S. at 115, 113 S.Ct. at 575.

The majority also errs in substituting its judgment for the district court's, regarding the extent of benefits Mr. Morales's attorneys conferred on persons other than their client by their limited victory. It is firmly established that the district court has discretion over how much to award for attorney's fees, and our review authority is limited to determining whether there was abuse of discretion. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Franceschi v. Schwartz*, 57 F.3d 828, 830 (9th Cir.1995); *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir.1992); *Jordan v. Multnomah County*, 815 F.2d 1258, 1261 (9th Cir. 1987); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 480 (9th Cir.1985). Indeed, the reason Justice Powell gave for his fifth vote to affirm our decision in *Riverside* was the limited scope of appellate review. *Riverside*, 477 U.S. at 581–86, 106 S.Ct. at 2697–2700.

Mr. Morales's attorney had made a formal demand for $250,000, and urged the jury to award $150,000 to $250,000 in compensatory damages, plus $500,000 in punitive damages. The jury decided that the police officer "unlawfully arrested or detained plaintiff as a result of negligent performance of his duties." But it also decided that Mr. Mor-

ales himself was negligent and that his own negligence was also a proximate cause of his injury. They attributed 45% of the negligence to Mr. Morales and 55% to the police officer, and found total damages suffered by Mr. Morales of $17,500. Mr. Morales's attorney wanted $139,783.25 in fees for getting his client $17,500 (the court decided that $17,500, not 55% of $17,500, was the appropriate award).

Mr. Morales won damages of $17,500, so a one-third contingent fee to would have been $5,833. That is the private market measure of the fee commensurate with the extent of success obtained for Mr. Morales. Cases like Mr. Morales's are rarely handled on an hourly basis, because the clients cannot afford the risk of paying more than they win, and the lawyers cannot afford the risk of nonpayment. The district judge thought a fee of $20,000 took proper account of the reasonable time spent and rates chargeable, the extent of success for Mr. Morales, and the benefit conferred on the public. That is an extra $14,167 for what the lawyers did for the public, on top of the $5,833 for what they did for Mr. Morales. The judge noted that the $17,500 award "constitutes a warning to law enforcement officers not to treat civilians unconstitutionally." Only that benefit could justify awarding more to the lawyer than his client obtained from his services. As we said in *McGinnis*, "[t]he 'private attorney general' theory lets the attorneys recover more than the benefit to their client would make reasonable, because they also confer benefits on others throughout society by winning a civil rights claim." *McGinnis*, 51 F.3d at 810.

There are several things wrong with an excessive award of attorneys' fees in a case such as this. One is over-deterrence. The police, having been called by a private guard who had spotted a weapon, had taken a loaded M-1 carbine from a van. The arresting officer knew there was a law against

injunction to grant a license, and damages. The Board yielded in response to the lawsuit, and agreed to grant licenses to Stivers, so the plaintiff won substantial relief, even though he lost what was left of the case on summary judgment. We therefore reversed the denial of attorneys' fees. Our purported limitation of *Farrar* showed why the lack of a substantial damages award did not

bar an attorney's fees award. *Stivers* is consistent with *McGinnis* and the other cases discussed above. Where a plaintiff wins substantial relief in response to the lawsuit, he is generally entitled to an attorney's fee award, even where the monetary portion of the relief is absent or nominal. *Farrar*, 506 U.S. at 111–12, 113 S.Ct. at 573; *Stivers*, 71 F.3d at 751.

carrying a loaded weapon in a vehicle. The van was registered to a "Robert Garcia," and the police had an outstanding arrest warrant for a "Roberto Garcia" for murder. Mr. Morales had asked a security guard about the seizure of the weapon, at the request of another individual whose English was limited, but the police officer had no reason to suppose that Mr. Morales's inquiry had been on behalf of someone else. When asked for his identification, Mr. Morales, who had obviously been drinking, did not produce it, so the policeman could not ascertain that he was Mr. Morales and not Roberto Garcia, the murder suspect. The jury did not think the arrest was egregious, outrageous police misconduct. They thought the fault was about 55% to 45%, and that no punitive damages were appropriate. Just how much do we want to deter police from arresting a man in this situation? Though he was not guilty of anything, the policeman had reason to think that Mr. Morales was at least a violator of the law against possession of a loaded gun in a vehicle, and perhaps was wanted for murder. Do we want a police officer to say "better a man suspected of murder who has been drinking should carry a loaded firearm in his vehicle, than that I should risk making an unlawful arrest"? That does not make sense. We should deter police from acting recklessly, but lawyers confer harm, not benefit, on society if the police are deterred by immense awards from touching a situation like this with a ten foot pole.

Second, excessive attorneys' fees awards in section 1983 litigation unduly divert legal resources from other uses. People injured by negligent drivers and on the job, people who need wills drawn, people who need tenants evicted or landlords restrained from unlawful evictions, people who need their construction contracts reviewed and bank loans secured so they can start work, have to compete for legal services with Mr. Morales, who can offer a lawyer $139,000 to sue a policeman for arresting him erroneously and holding him for two hours. Congress chose to give lawyers more of an incentive than the usual contingent fee out of the damages recovery to take section 1983 cases, but neither the words nor the purpose of section 1988 justify a $139,000 jackpot in a $17,500 case.

Third, excessive attorneys' fees awards in civil rights cases harm the victims of civil rights violations. That sounds paradoxical, but is not surprising to anyone with experience in personal injury work. The wronged victim of the civil rights violation is likely to want, or if physically injured, need, money, as compensation for the wrongs done to him. But the cases are hard to win, and probably most wrongful arrest cases taken to trial lose on liability, or result in low or nominal awards. So the safest, fastest and most efficient way for the victim of the wrong to obtain money is likely to be settlement. But no municipality is going to settle a $17,500 case for $157,000, with the lawyer to get the lion's share of the money. In any one case, it is unlikely that the plaintiff's lawyer will "ring the bell," as personal injury lawyers put it. The settlement value to the city is likely to be the risk of a bad loss multiplied by its size, perhaps 10% of $150,000 to $200,000. Also, a defense lawyer would be concerned about the ethics of a settlement where the plaintiff's lawyer, not the wronged plaintiff, gets the lion's share of the money. It would look like a bribe to the lawyer to dump the case. The plaintiff's lawyer would have a very great financial incentive to talk his client out of settling, and to take the case to trial. All the fees he might hope for from ten small settlements are unlikely to add up to one jackpot fee, so even if he wins a very small percentage of cases at trial, the lawyer will do better to try them all. If the fee is too high relative to the client's recovery, then the lawyer's economic interest conflicts with his client's, because the client has only one case but the lawyer has many. The majority's approach today turns the case into a dollar slot machine for the lawyer. Most lawyers are honorable people, and the lawyers representing plaintiffs in civil rights cases are often highly idealistic, but economic incentives work in the long run on the best people. A lot of people wronged by the police are going to be wronged again by being talked into exchanging small settlements for big trial defeats, under the attorneys' fees rule the majority adopts today.

Mr. Morales's attorneys conferred a moderate benefit on their client, and are entitled

to a moderate fee commensurate with that benefit, increased by a moderate extent to reflect the benefit conferred on the rest of society. I do not understand why the majority characterizes a $20,000 attorney's fee as "low," in a $17,500 case. Three or four fees a year this big, and a large number of smaller fees, are the typical path to grossing six figures and netting in the high five figures for a successful lawyer. A successful lawyer does not, however, spend 938 hours, equivalent to working full time on nothing else for half a year or more, on a $17,500 case. The district judge exercised discretion precisely in accord with controlling law. The district judge expressly considered the lodestar fee request made, determined that the fee would be excessive when considered relative to the results achieved, and awarded a fee commensurate with those results, increased by the benefit conferred on persons other than the lawyer's client. A $20,000 fee to a lawyer for getting $17,500 for his client in this circumstance is defensible. A $139,783.25 fee to a lawyer for getting $17,500 for his client is an incentive for the lawyer to serve, not his client, but himself.