**PRISON LEGAL NEWS, Plaintiff,**

v.

**Arnold SCHWARZENEGGER, et al., Defendants.**

**No. C 07–02058 CW.**

United States District Court, N.D. California.

April 10, 2008.

1096

Jason.

Amy Whelan, Meghan Regina Lang, Rosen, Bien & Galvan, LLP, San Francisco, CA, for Plaintiff.

Emily L. Brinkman, CA Attorney General, San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR RECOVERY OF FEES A AND ESTABLISHMENT OF A SEMI–ANNUAL FEE PROCESS

CLAUDIA WILKEN, District Judge.

Plaintiff Prison Legal News has filed a motion for recovery of reasonable attorneys' fees and establishment of a semi-annual fees process. Defendants oppose the motion. The motion was decided on the papers. Having considered all of the papers filed by the parties, the Court grants Plaintiff's motion in part and denies it in part.

## BACKGROUND

Plaintiff Prison Legal News (PLN) is an organization that alleged that the California Department of Corrections and Rehabilitation (CDCR) illegally censored its publications. In January, 2006, the parties entered into an agreement to negotiate in order to settle Plaintiff's claims and to avoid litigation. The agreement to negotiate provided that Plaintiff "shall be the prevailing party for purposes of reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988 and other relevant fee shifting statutes." Rosen Decl., Ex. 8 at Appx. A ¶ 8.

In December, 2006, the parties entered into a settlement agreement. The settlement agreement provides that "CDCR agrees to pay to PLN's counsel reasonable attorneys' fees, costs and expenses until the time that this Settlement Agreement is signed by the parties...." *Id.* at Ex. 8 ¶ 7. The settlement agreement also provides that

> PLN and its attorneys expressly reserve their rights to pursue claims for attorneys' fees, costs and expenses for work performed after the time the Settlement Agreement is signed by all parties, including for work spent on substantive issues related to this Agreement and/or work spent securing their fees for fees and collecting any and all fees and expenses that are due to them. The CDCR expressly reserves its right to oppose any such claim. The Parties agree that all issues pertaining to any such attorneys' fees, costs and expenses are unresolved and therefore are subject to Paragraphs 9–10 of this Agreement

*Id.* at ¶ 7(b). Paragraph nine provides that the parties will request that the Court "dismiss the complaint, but retain jurisdic-

tion to enforce the Settlement Agreement, including without limitation, disputes over Defendant's compliance with the terms of this Agreement and the amounts of the attorneys' fees, costs and expenses to be paid to Plaintiff's attorneys." *Id.* at ¶ 9. Paragraph ten provides that the parties will submit to jurisdiction in this District for purposes of enforcing the settlement agreement.

The settlement agreement also provides that within 150 days of its execution, Plaintiff would file a complaint in this district alleging the claims resolved by the settlement agreement and that the claims would be immediately dismissed, with the Court retaining jurisdiction to resolve any disputes over compliance or attorneys' fees. *Id.* at ¶ 8. Plaintiff filed this complaint on April 12, 2007. On August 22, 2007, the parties filed a stipulation and request for dismissal of the case without prejudice.[1]

Between December 12, 2006 and September 5, 2007, the parties attempted to resolve their disputes regarding fees and costs. The parties were able to agree to the amount to which Plaintiff was entitled for work done before December 12, 2006, when the settlement agreement was executed. Now Plaintiff moves for fees for work performed by its attorneys after December 12, 2006 and for establishment of a semi-annual fees process.

## DISCUSSION

### I. Entitlement to Fees

■ Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." "Prevailing plaintiffs are normally entitled to fees unless special circumstances render an award unjust."

*Muckleshoot Tribe v. Puget Sound Power & Light Co.*, 875 F.2d 695, 696 (9th Cir. 1989). Defendants argue that, although the settlement agreement states that Plaintiff is the prevailing party for purposes of setting reasonable attorneys' fees and costs until the date the settlement agreement was signed by the parties, the plain language of the agreement "does not declare that Plaintiff is the prevailing party on work performed after that date." Opposition at 4. Therefore, Defendants argue, Plaintiff is not entitled to fees under § 1988 for any work done after the date the settlement agreement was signed. Plaintiffs counter that they may recover these fees because they have not explicitly waived the right to collect fees for activities performed to ensure and enforce compliance with the settlement agreement.

■ In *Muckleshoot Tribe,* the Ninth Circuit held that "a waiver of attorneys' fees may be established by clear language in the release" or, in some circumstances, "where the language in the release is unclear or ambiguous, [by] the intent of the parties that the attorneys' fees be waived." *Id.* at 698. Absent such an explicit or implicit waiver, a prevailing plaintiff will normally be entitled to recover fees. *Id.* at 696.

Defendants argue that Plaintiff's reservation of its right to seek fees for work performed after the agreement was signed and Defendants' reservation of their right to oppose such a request constitutes a fee waiver. However, Defendants do not cite any authority for such a reading of a reservation of rights. As Plaintiff points out, such a reservation of rights clearly establishes that it does not waive its right to

---

1. The parties originally asked the Court not to close this case upon its dismissal. At a November 27, 2007 case management conference, the parties agreed that this case should be closed upon resolution of this motion for attorneys' fees subject to retention of jurisdiction for enforcement. In a concurrently filed order, the Court now closes the case.

fees for work performed after the settlement agreement was signed.

Defendants next argue that Plaintiff is not a prevailing party "automatically" entitled to fees for work performed after the settlement agreement was signed and, for purposes of work performed after the agreement was signed, "Plaintiff is entitled to prevailing party status only after succeeding on a motion to enforce a material violation of the Settlement Agreement based upon proving a constitutional violation." Opposition at 6. However, Plaintiff does not argue that it is "automatically" entitled to fees. Rather, Plaintiff has filed a motion arguing that it is the prevailing party for purposes of the work performed after the settlement agreement was signed and that the amount requested is reasonable.

█ Defendants' only argument that Plaintiff is not the prevailing party for purposes of work performed after the settlement agreement was signed is that the agreement "required both parties to undertake work after the date of settlement, specifically the filing of a complaint and a dismissal." Opposition at 6. Moreover, Defendants argue, "No significant amount of work was necessary to accomplish this task." *Id.* Although Defendants can and do argue that the amount of fees requested by Plaintiff is unreasonable, the minimal nature of the work is not a sufficient basis on which to deny fees altogether. Further, as Plaintiff notes, much of the work it performed after signing the settlement agreement was anticipated by the agreement and necessary to effectuate its terms. Therefore, the Court finds that Plaintiff is entitled to attorneys' fees for work performed after the settlement agreement was signed and turns to the reasonableness of the fees requested.

## II. Reasonableness of Fees

█ In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262. However, the court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). The twelve *Kerr* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.*

The Supreme Court has recognized that, while it is appropriate for the district court to exercise its discretion in determining an award of attorneys' fees, it remains important for the court to provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Hall v. Bolger*, 768 F.2d 1148, 1151 (9th Cir.1985) (in computing an award, the district court should provide a "detailed

account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate' ") (quoting *Blum,* 465 U.S. at 898, 104 S.Ct. 1541).

Plaintiff requests a total of $138,781.29 in fees and costs for work on the case between December 12, 2006, the date the settlement agreement was signed, and August 31, 2007. This amount represents $95,306.50 in attorneys' fees and $1,376.41 in expenses for time spent on the underlying litigation and $42,098.38 in attorneys' fees and expenses incurred in relation to the instant attorneys' fees claim. Defendants argue that the amount requested is unreasonable on several grounds.[2]

## A. Non–Litigation Activities

■ Defendants first argue that Plaintiff improperly included fees for 10.65 hours spent on "activities unrelated to litigation" such as drafting press releases and responding to media inquiries. The Ninth Circuit has held, "Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same." *Davis v. City of San Francisco,* 976 F.2d 1536, 1545 (9th Cir. 1992), *reh'g denied and opinion vacated in non-relevant part,* 984 F.2d 345 (1993).

Plaintiff's counsel asserts that the press releases and interviews with members of the press were necessary to the success of this litigation. As Plaintiff argues, absent such press coverage, the inmates who subscribe to its publication "would be unlikely to learn of the terms of the Agreement, which include a subscription to *Prison Legal News* for every CDCR institution's libraries." Reply at 11. This knowledge was crucial to Plaintiff's goal of improving prisoner access to its publication. The Court will not reduce Plaintiff's attorneys' compensable hours on this basis.

## B. Administrative and Clerical Activities

■ Defendants next challenge $11,628.12 in fees based on 52.32 hours of work performed by attorneys and paralegals that they allege is administrative or secretarial. The Supreme Court has held that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who preforms them." *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Defendants' expert John Trunko identifies tasks including "updating and organizing files, calendaring, supervising support staff, filing and reviewing their billing statements" that Defendants assert they should not be required to pay. Without citation, Trunko concludes, "Administrative and clerical activities are considered to be part of a law firm's overhead and, as such, included within the law firm's hourly rates for professional services. They are generally not properly chargeable to a client or recoverable in litigation." Trunko Decl. ¶ 11.

However, the Ninth Circuit has held that:

---

**2.** Defendants include a general argument that 99.60 hours of work billed by Plaintiff's attorneys is not sufficiently detailed because they utilized "block billing," that is, they billed as a lump sum across two or more discrete tasks so that someone reviewing the record cannot ascertain how much time was charged to complete a specific task. However, Defendants state that "those entries have not been questioned here solely on the basis of the billing method." A review of the challenged entries reveals that they are sufficiently specific to determine how much time was charged to complete a specific task. Therefore, the Court will not reduce compensation for the hours based on Defendants' claim that the time entries are block-billed.

If the attorney's hourly rate already incorporates the cost of work performed by non-attorneys, then courts should not compensate for these costs as an additional reasonable attorney's fee. The key ... is the billing custom in the relevant market. Thus, fees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is the prevailing practice in a given community. Indeed, even purely clerical or secretarial work is compensable if it is customary to bill such work separately, though such tasks should not be billed at the paralegal rate, regardless of who performs them.... [T]he district court may properly insist that the [moving party] show that it is the custom in the relevant community to bill separately for work performed by the non-attorneys at issue....

*Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Redland*, 460 F.3d 1253, 1257 (9th Cir.2006) (internal quotation marks and citations omitted).

Lead counsel for Plaintiffs, a partner at the firm, declares that the challenged tasks "are all tasks that would be billed by me, my firm and San Francisco Bay Area attorneys to clients who are billed and who pay bills on a current basis." Rosen Decl. ¶ 17. However, Plaintiffs simply argue that "[m]any of the tasks" challenged as clerical "are in fact crucial tasks that require attorney or paralegal attention." Reply at 11. As examples, Plaintiffs note that Defendants challenge fees for calendaring and reviewing billing statements.

 The challenged tasks were performed by one partner, three associates and two paralegals. *See* Trunko Decl., Ex. G. After reviewing the challenged billing items, the Court finds that the following items are clerical tasks that cannot be billed at a paralegal or attorney rate:

| Date | Name | Task | Hours Billed | Hourly Rate | Amount Billed |
|------|------|------|--------------|-------------|---------------|
| 12/12/06 | K. Le | Create index for settlement agreement binder | .20 | $170 | $34 |
| 3/8/07 | K. Le | File case emails | .20 | $170 | $34 |
| 3/8/07 | K. Le | File correspondence and memos | .20 | $170 | $34 |
| 3/13/07 | K. Le | File memos and correspondence | .20 | $170 | $34 |
| 3/19/07 | M. Wilkinson | File relevant pages from AW email re: CA regulatory notice registry | .30 | $160 | $48 |
| 4/19/07 | K. Walczak | Update case calendar w/new dates | .30 | $295 | $ 88.50 |
| 4/23/07 | M. Wilkinson | Copy file and courtesy copies of proof of service, proof of service cover letter and prep for Fed Ex | .90 | $160 | $144 |
| 6/6/07 | A. Whelan | Conf w/ support staff re processing same and emails to/from client re same | .15 | $340 | $51 |
| 6/7/07 | M. Wilkinson | 2 letters re: notice of lawsuit and waiver of service of summons, gather enclosures, make copies, scan, file, mail, and circulate | 2.7 | $160 | $432 |
| 6/25/07 | M. Wilkinson | Print and gather docs for KMW re filing deadlines and ADR | .40 | $160 | $64 |
| 7/31/07 | S. Rosen | Filing | .10 | $700 | $70 |
| 7/31/07 | M. Wilkinson | Scan and circulate letter re RPMG hearing transcript | .10 | $160 | $16 |

| 8/22/07 | K. Walczak | Supervise arranging for messenger for courtesy copies of stipulated dismissal, settlement agreement, proposed order to court | .20 | $295 | $59 |
|---------|------------|---|-----|------|-----|
| | | | | **TOTAL** | **$1,108.50** |

Therefore, the Court reduces Plaintiff's requested fees by $1,108.50.

### C. Vague Billing Entries

Defendants next challenge $14,241.25 in fees based on 20.88 hours of entries they argue are "non-descriptive." Opposition at 11. Almost all of the entries challenged on this basis are entries by Sanford Rosen for email or conferencing that do not indicate the subject of such communications or do not indicate the other party or parties involved in the communications. However, as Plaintiffs note, many of those entries "are readily understood when viewed in the context of the surrounding entries." Reply at 12. For example, it is clear that the January 4, 2007 entry for "email to/ from AW" was about a letter regarding settlement payment when read in the context of a billing entry by Amy Whelan for "ltr from M. Jorgenson re settlement payment; email to SJR re same" made on the same date. Rosen Decl., Ex. 9 at 2. Moreover, it is not unreasonable to expect that the partner supervising the case would have multiple entries for conferencing and emailing with the associates working with him. The Court will not reduce the Plaintiff's attorneys' compensable hours on this basis.

### D. Multiple Attendance and Excessive Internal Conferencing

■ Defendants next challenge $414 of fees based on 1.35 hours of conferences and meetings where multiple attorneys were in attendance and $8,125.22 of fees based on 27.06 hours of intra-office conferencing. Defendants do not provide any legal basis for denying these fees in their opposition and simply cite their expert Trunko's declaration in support of their request.

Defendants' request for a reduction for multiple attendance is based on two telephone conferences, one which was attended by a partner and two associates of Plaintiffs' attorneys' firm and another which was attended by two associates.[3] Defendants do not provide any basis for a finding that having more than one Plaintiff's attorney present at these conferences with counsel for Defendants was unreasonable. Accordingly, the Court will not reduce Plaintiff's attorneys' compensable hours on this basis.

■ Defendants cite only Trunko's declaration in support of their argument that Plaintiff's requested fees should be reduced for excessive internal conferencing. Without citation, Trunko argues, "Frequent conferencing among attorneys has often been criticized by the courts and may indicate excessive staffing or billing for communications of an administrative nature." Trunko Decl. ¶ 14. Trunko next states that over twenty-one percent of Plaintiff's requested fees are based on billing for intra-office conferencing, a figure Trunko describes as "significant." *Id.* He therefore concludes that the "amount

---

**3.** Defendants mistakenly argue that four attorneys billed for one of these calls; however only three attorneys are included in Trunko's "multiple attendance" analysis. Trunko Decl., Ex. I. It appears that Trunko mistakenly included an entry for a conversation between Amy Whelan and "M. Jorgenson" as an example of a conference with multiple attendance even though Whelan was the only Plaintiff's attorney who participated or billed. *See Id.* at 2.

of such conferencing was undoubtedly increased as a result of the involvement of multiple attorneys in the case" before he recommends resolving the issue by arbitrarily challenging "the fees billed by the multiple biller(s) for the conference other than the participant in the conference with the highest total fees for the conference." *Id.* Neither Trunko nor Defendants provide any explanation for this methodology. Moreover, as another court stated in rejecting a challenge to fees based on the identical methodology, "A conference with only one participant is no longer a conference. The upshot of accepting [the defendant's] view would be to hold that all conferencing by Plaintiff's attorneys was excessive and duplicative." *Chin v. DaimlerChrysler Corp.,* 520 F.Supp.2d 589, 605 (D.N.J.2007). However, Defendants have provided no evidence or argument that any conference was excessive or duplicative. Therefore, the Court will not reduce Plaintiff's attorneys' compensable hours on this basis.

### E. Research Presumed Familiar

 Defendants next argue that they should not be required to pay for attorney time spent researching issues that Trunko opines "would be presumed to be familiar to experienced counsel." Trunko Decl. ¶ 15. Neither Trunko nor Defendants provide any basis for this determination. It appears that almost all of the challenged entries are based on time spent researching local procedural rules. *See* Trunko Decl., Ex. K. As Plaintiffs note, such rules are subject to change and failure to comply with them can result in prejudice to an attorney's clients. The Court will not reduce Plaintiff's attorneys' compensable hours on this basis.

### F. Other Duplicative and Potentially Excessive Time

 Defendants next argue, "Of the hours claimed by Plaintiff's counsel for work performed since December 12, 2006[,] 315.27 hours and $103,172.67 were spent on duplicative and excessive time-keeping." Opposition at 12. As with their other arguments, Defendants cite only Trunko's declaration in support of this argument. Defendants cite as an example of excessive billing that Plaintiff's counsel has billed for 35.43 hours of researching, drafting, reviewing and editing the complaint prior to settlement and that counsel spent additional time on the complaint after the settlement agreement was executed. However, Plaintiff notes that "the Complaint itself was a negotiated document, requiring back and forth interaction with Defendants and their attorneys." Rosen Reply Decl. ¶ 21. Indeed the challenged time spent on the complaint includes entries for communications with Defendants and later revisions. *See* Trunko Decl., Ex. L–1. Defendants also note that thirty percent of Plaintiff's fee request is based on fees for this fee request. However, Defendants do not indicate why they believe that the 125.60 hours spent on this fee request is unreasonable.

Defendants next argue that a twenty-five percent reduction in fees is appropriate based on Trunko's conclusion that Plaintiff's attorneys have submitted fees for excessive and redundant tasks. The only factual basis for this argument is Trunko's statement that "[i]n some cases, the time billed for various projects appears potentially excessive." Trunko Decl. ¶ 16. Moreover, Plaintiff's attorneys have already reviewed their billing records and made discrete billing reductions of $14,177.50. The Court will not reduce Plaintiff's attorneys' compensable hours further than counsel already has.

### G. Expenses

Defendants next challenge $951.70 of Plaintiff's request for $1,492.79 in expenses

related to litigation. Again, the only basis for this challenge is citation to Trunko's conclusion that the expenses claimed are questionable because he believes they are not adequately documented or they are general firm overhead that would not normally be charged to a client. *See* Trunko Decl. ¶ 17. In particular, Defendants argue that Plaintiff's charge for $464.69 for online and Westlaw research should be accompanied by further documentation. Moreover, he argues, such charges are normally accrued by a law firm in the course of running a business. However, Plaintiff submits a declaration indicating that both the level of detail of the billing and the request for compensation for such research are consistent with the firm's practice for its paying clients and in its fee applications. *See* Rosen Reply Decl. ¶ 26. The Court finds that these expenses are adequately documented and reasonable.

■ Defendants next challenge Plaintiff's claim for $0.20 per page for photocopying. However, Plaintiff provides evidence that counsel routinely charges $0.25 per page to its paying clients and that these Defendants routinely pay them $0.20 per page in other cases. The Court will not reduce the amount charged for photocopying.

■ Finally, Defendants argue that Plaintiff's travel expenses should be reduced because counsel failed to provide receipts or documentation relating to travel on May 11, 2007. The challenged items are for $8.00 in tolls and $15.79 and $7.50 in gas for travel to a public hearing on May 11, 2007. Trunko Decl., Ex. N. Plaintiff provides evidence that this is the level of detail included in counsel's bills to paying clients and in other fee requests. The Court finds that this level of detail is sufficient to support Plaintiff's request. The Court will not reduce the compensation sought for expenses.

**H. Hourly Rate**

■ Determining a reasonable hourly rate is a critical inquiry. *Jordan*, 815 F.2d at 1262 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *See Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988). These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards. *Morales*, 96 F.3d at 363–64. The reasonable rate inquiry should also be informed by reference to the prevailing market rates in the forum district. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992).

Plaintiff seeks an hourly rate of $700 for Sanford Jay Rosen, a 1962 law school graduate and the lead attorney on its case, $340 for Amy Whelan, a 2001 law school graduate, $325 for Meghan Lang, a 2002 law school graduate, $295 for Kenneth Walczak, a 2003 law school graduate, and between $160 and $170 for paralegals and law student interns. Defendants argue generally that these rates are exorbitant and go on to note that the hourly rates requested exceed the average rates charged by law firms in California, $353 for partners and $252 for associates. Defendants further note that the rates claimed by Plaintiff's counsel far exceed the rates allowed by the Prison Litigation Reform Act (PRLA). However, Defendants do not, and indeed cannot, argue that this case is governed by the PRLA.

The only specific argument that Defendants make is that Plaintiff has not provided sufficient evidence to establish that Mr. Rosen's claimed hourly rate of $700 is the

prevailing market rate. Defendants argue that Plaintiff only provides evidence that one other Bay Area law firm bills its managing partner at $700 per hour but name two firms that do so—Altshuler Berzon LLP and Cooley Godward. Opposition at 14–15. In fact, Plaintiff's expert cites at least eight law firms that billed over $700 an hour in recent years. *See, e.g.,* Pearl Decl. at 8, 10, 11, 13–15.

Defendants also argue that Plaintiff's attorneys' claimed rates should be reduced because the case "did not involve complex legal issues" and involves "issues which Plaintiff has been litigating all over the United States for the past several years.[4] Opposition at 14. However, Plaintiff provides evidence that a high level of skill and significant work were required to reach a settlement in this case. The Court will not reduce the hourly rates claimed by Plaintiff's attorneys.

## I. Interest

 Plaintiff argues that it is entitled to interest on these fees and costs dating back at least to September 12, 2007, the date by which Defendants received notice of the amount of fees and costs claimed by Plaintiff, if not to the date of the Settlement Agreement, the date Plaintiff argues that it "secured its entitlement to a general award of civil rights attorney's fees." Motion at 11. Indeed, the Ninth Circuit has held, "Interest [on attorneys' fees] runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of fees is set." *Friend v. Kolodzieczak,* 72 F.3d 1386, 1391–92 (9th Cir.1995), *cert. denied,* 516 U.S. 1146, 116 S.Ct. 1016, 134 L.Ed.2d 96 (1996). Defendants do not respond to this argument. Nonetheless, the settlement agreement did

not state that Plaintiff would be entitled to attorneys' fees for work performed after the agreement was signed; it only recognized that Plaintiff might file a motion for fees for such work. The Court finds that Plaintiff is only entitled to interest accruing subsequent to the date of this order.

## III. Establishment of Semi–Annual Fees Process

 Plaintiff next argues that the Court should establish a semi-annual process to protect its right to future fee awards. Plaintiff argues that such a process is necessary because "[m]any of the benchmarks set by the Settlement Agreement have not yet been met." Motion at 11. Further, Plaintiff argues that "the Settlement Agreement specifically contemplates that PLN will take a prominent role in ensuring full compliance with the terms of the Agreement." *Id.*

However, as Defendants note, the Settlement Agreement does not specifically establish a right to ongoing monitoring of the implementation of the agreement's terms. It only provides that Defendants will provide Plaintiff with specific documents and that Plaintiff may file motions to enforce the agreement if it can prove a constitutional violation. Moreover, Plaintiff "anticipates that compliance work in this matter will be far less extensive than" in other cases with regular fees procedures. Motion at 12. The Court is not convinced that a regular fees process is necessary or appropriate at this time. Of course, this does not preclude Plaintiff from filing further motions for attorneys' fees.

---

**4.** Defendants also argue that the fact that this case was resolved without prolonged litigation warrants a reduction in the hourly rate. While the extent of litigation activities goes to

the number of hours spent on the case, it does not go to the complexity of the issues themselves.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees is GRANTED in part and DENIED in part (Docket No. 23). The Court awards Plaintiff $137,672.79 in fees and expenses, to be paid forthwith by Defendants.

IT IS SO ORDERED.