Susan Rene **JONES**, Plaintiff,

v.

**METROPOLITAN LIFE INS. CO., et al., Defendants.**

No. C 08–03971 JW.

United States District Court, N.D. California, San Francisco Division.

Feb. 24, 2012.

Robert Burton Nichols, Jr., Attorney at Law, San Jose, CA, for Plaintiff.

Rebecca A. Hull, Erin A. Cornell, Sedgwick LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR ATTORNEY FEES

JAMES WARE, Chief Judge.

Presently before the Court are Plaintiff's Motions for Attorney Fees.[1] The Court finds it appropriate to take the Motions under submission without oral argument. *See* Civ. L.R. 7–1(b). Based on the papers submitted to date, the Court GRANTS in part and DENIES in part Plaintiff's Motions for Attorney Fees.

### A. *Background*

A detailed discussion of the factual background and procedural history of this case may be found in the Court's July 8, 2010 Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment. (hereafter, "July 8 Order," Docket Item No. 118.) The Court reviews the procedural history relevant to the present Motions.

On August 20, 2008, Plaintiff filed her Complaint, asserting a claim for benefits

---

1. (Plaintiff Jones's Restated Notice of Motion and First Interim Motion for Attorney Fees, hereafter, "Motion," Docket Item No. 178; Plaintiff Appellant Jones's Ninth Circuit Fee Application All Filings [sic] Pursuant to the Court's February 2, 2012 Order, hereafter, "Application," Docket Item No. 189.) On February 3, 2012, Plaintiff filed a duplicative Application for Ninth Circuit Attorney Fees, which the Court DENIES as moot in light of the identical later-filed Application. (Docket Item No. 187.) Accordingly, the Court also DENIES as moot Plaintiff's Motion to Strike her own duplicative February 3, 2012 Application for Ninth Circuit Attorney Fees. (Jones Motion to Strike Previous Filings of Ninth Circuit Pleadings [Documents 187 and 188] as Nonconforming to Court's Order [Document 184] and Replace Them with Document 189, Docket Item No. 190.) Finally, on January 8, 2012, Plaintiff filed a document styled "Notice of Motion for Ninth Circuit Attorney Fee Application," but failed to attach any memorandum or other documents in support of that filing. (Plaintiff Jones's Notice of Motion on Fee Application Transferred from Ninth Circuit, Docket Item No. 179.) Accordingly, the Court also DENIES as moot Plaintiff's Notice of Motion.

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against the Plan Administrator and MetLife.[2] The case was assigned to the Court's Alternative Dispute Resolution ("ADR") Multi–Option Program. (Docket Item No. 6.) On July 30, 2009, the parties participated in a mediation session, for which counsel signed a confidentiality agreement pursuant to the ADR Local Rules requiring confidentiality in mediation sessions.[3]

Between September 22, 2009 and May 3, 2010, Plaintiff's counsel, Robert Nichols ("Nichols") filed a number of documents which revealed confidential statements made during the court-sponsored mediation session. (October 15 Order at 2–4.) After Nichols refused to stipulate to removal of the confidential information from the record, Defendants filed an initial motion to strike pertaining to that confidential information. (*See id.*) On May 19, 2010, the Court referred Defendants' motion to strike to Magistrate Judge Laporte. (Docket Item No. 101.) In opposition to that motion to strike, Plaintiff filed moving papers which also revealed confidential statements from the mediation session, prompting Defendants to file an amended motion to strike. (*See* October 15 Order at 3–4.) On June 14, 2010, Judge Laporte recused herself from this matter, and Defendants' amended motion to strike was referred to Magistrate Judge Ryu. (*Id.* at 4.) On July 15, 2010, Defendants lodged an ADR Complaint against Nichols, which was also referred to Judge Ryu. (*Id.*) On October 15, 2010, 2010 WL 4055928, Judge Ryu issued an order granting in part Defendants' amended motion to strike. (*See id.* at 23–24.) In her October 15 Order, Judge Ryu found that Nichols had violated

the ADR Local Rules by disclosing confidential information from the court-sponsored mediation session "in numerous public filings in this case," which Judge Ryu found to be a violation of Nichols' "professional duty to be aware of and refrain from violating this Court's Local Rules." (*Id.* at 21.)

On July 8, 2010, the Court granted summary judgment to Defendants. (*See* July 8 Order.) In its July 8 Order, the Court found that Plaintiff's claim for reinstatement of benefits was moot, insofar as her benefits had already been reinstated. (*Id.* at 5–6.) Further, the Court found that Plaintiff's claim to "various other forms of relief" was premature, insofar as Plaintiff had failed to exhaust her administrative remedies as to them. (*Id.* at 6–8.) On August 6, 2010, Plaintiff appealed to the Ninth Circuit. (Docket Item No. 127.) On October 28, 2011, 456 Fed.Appx. 647 (9th Cir.2011), the Ninth Circuit affirmed in part and vacated in part the Court's July 8 Order. (hereafter, "October 28 Memorandum," Docket Item No. 175.) In particular, the Ninth Circuit vacated the Court's denial of fees to Plaintiff, and instructed Plaintiff to "file a fee motion." (*Id.* at 3–4.) In addition, on January 3, 2012, the Ninth Circuit transferred Plaintiff's application for attorney fees at the appellate level to this Court. (Docket Item No. 180.)

Presently before the Court are Plaintiff's Motion for Attorney Fees and Plaintiff's Application for Ninth Circuit Attorney Fees.

## B. *Standards*

After finding that a plaintiff is entitled to fees, "[i]t remains for the dis-

---

**2.** (Initial Complaint ¶¶ 1, 5–7, Docket Item No. 1.)

**3.** (*See* Docket Item No. 31; *see also* Redacted Order Granting in part and Denying in part

Defendants' Supplemental and Amended Motion to Strike at 2–4, hereafter, "October 15 Order," Docket Item No. 154.)

trict court to determine what fee is reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). It is well established that the starting point for determining the amount of an attorney fee award is to calculate the "lodestar." *Id.; Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996). A court calculates the lodestar by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363.

■■■ Once the lodestar is calculated, there is a strong presumption that the figure "represents a reasonable fee." *Morales*, 96 F.3d at 363 n. 8. Nevertheless, after the lodestar is calculated, a court may assess "whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Id.* at 363; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).[4] While it is not incumbent on the court to address the *Kerr* factors expressly, it must take into account those factors not already subsumed in the lodestar figure. *Morales*, 96 F.3d at 364 n. 10.

## C. *Discussion*

### 1. District Court Fees

Plaintiff moves for an award of attorney fees in the amount of $374,650.83, which represents compensation for 681.06 hours at a rate of $550 per hour. (*See* Motion at 23.) Defendants respond that: (1) Plaintiff's claimed hourly rate is not reasonable; (2) the time reportedly incurred is excessive and should be reduced; and (3) Plaintiff should not be awarded fees for time incurred in connection with the improper public disclosures of settlement discussions.[5]

■■■ In ERISA cases, "[a] court in its discretion may award fees and costs to either party, as long as the fee claimant has achieved some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, —— U.S. ——, 130 S.Ct. 2149, 2152, 176 L.Ed.2d 998 (2010) (internal punctuation and citations omitted). Here, Defendants do not dispute that Plaintiff achieved "some degree of success on the merits" in litigation before this Court, and concede that this degree of success "permit[s] her to seek an award of fees."[6] Thus, the Court only considers the issues of: (1) the reasonable hourly rate for Plaintiff's attorney; and (2) the correct total number of hours.

### a. Reasonableness of the Rate

At issue is the reasonable hourly rate for Plaintiff's counsel during the relevant time period.

■■■ "The hourly rate for successful civil rights attorneys is to be calculated by

4. The twelve *Kerr* factors bearing on the reasonableness of the calculation of attorney fees under federal law are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the *skill requisite to* perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by *the client or the circumstances*, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

5. (Defendants' Opposition to Plaintiff's Motion for an Award of Attorney Fees at 4–17, hereafter, "Opp'n," Docket Item No. 181.)

6. (*See* Opp'n at 2.)

considering certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir.2008) (citation omitted).[7] "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.2008) (citation omitted). "[T]he determination of a reasonable hourly rate 'is not made by reference to the rates actually charged the prevailing party.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir.2007) (citation omitted). Instead, "billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Id.* at 946 (internal punctuation and citations omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence— in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho*, 523 F.3d at 980 (citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Welch*, 480 F.3d at 947 (citation omitted).

Here, Plaintiff contends that a reasonable hourly rate for Plaintiff's counsel's time in this case is $550 per hour.[8] (Motion at 1.) In support of his proposed hourly rate, Plaintiff's counsel has submitted a declaration in which he states that he has been "practicing ERISA benefits law since 1975," and in which he states that he charged "$400 per hour" to clients in 2007 "and early 2008," and that "[t]hereafter, through 2009, [he] charged $500 per hour."[9] Further, Plaintiff's counsel submitted declarations from attorneys with experience litigating ERISA cases in California; those attorneys state that they currently charge between $550 and $600 per hour for their work in this area, and that they charged between $450 and $550 per hour between 2008 and 2010.[10] Finally,

7. Although *Moreno* addresses the hourly rate for "successful civil rights attorneys," courts in the Ninth Circuit have applied it to consider fee awards sought by successful ERISA attorneys. *See, e.g., Crosthwaite v. A & J Pumping Inc.*, No. C 10–03040 SBA (MEJ), 2011 WL 6024592, at *10 (N.D.Cal. Nov. 21, 2011); *Nash v. Life Ins. Co. of N. Am.*, No. 08cv893–WQH–RBB, 2011 WL 2493738, at *3–5 (S.D.Cal. June 22, 2011). As the Ninth Circuit has explained, "attorney's fees are available under ERISA to the extent that they are available under civil rights statutes." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1469 (9th Cir.1995).

8. Defendants do not contend what the reasonable hourly rate for Plaintiff's counsel should be, though they contend that it should "not

[be] more than $450 per hour." (Opp'n at 18.)

9. (Declaration of Robert B. Nichols in Support of Motion for Attorney's Fees ¶¶ 3, 6, Docket Item No. 172–2.)

10. (*See, e.g.*, Declaration of Geoffrey V. White ¶ 6, Docket Item No. 172–3 (stating, in a declaration signed on December 13, 2011, that he "now charge[s] $550 per hour," and that he charged $450 per hour and $500 per hour in 2008 and 2009, respectively); Declaration of Melvyn Silver ¶ 3, Docket Item No. 172–3 (stating, in a declaration signed on November 30, 2011, that his "current rate is $550 per hour"); Declaration of Charles J. Fleishman ¶ 4, Docket Item No. 172–3 (stating, in a declaration signed on November 30, 2011, that his current rate is "calculated at $600 per hour").)

Plaintiff's counsel refers to a 2008 order in which another judge of the Northern District determined that he was entitled to an hourly rate of $450 per hour.[11]

Upon review, the Court finds it appropriate to set a rate of $450 per hour for Plaintiff's counsel. The hours at issue in this Motion were, almost without exception,[12] billed by Plaintiff's counsel between 2008 and 2010. Insofar as the declarations of other ERISA attorneys submitted by Plaintiff's counsel address the rates they charged during those years, they indicate that those attorneys received between $450 and $550 per hour for their work in that period.[13] Accordingly, because: (1) the evidence submitted by Plaintiff indicates that attorneys "of an ability and reputation comparable to that" of Plaintiff's counsel received between $450 and $550 per hour for work in the time period at issue, and (2) because a court in the Northern District made a determination that a reasonable hourly rate for Plaintiff's counsel during the time period at issue was $450 per hour, the Court finds that a rate of $450 per hour is a reasonable hourly rate for Plaintiff's counsel during the relevant time period.[14] *Welch*, 480 F.3d at 946–47.

■ Plaintiff's contention that Ninth Circuit caselaw requires a court to "apply[ ] the current market rates to all past time spent on a case to make up for the plaintiff attorney's delay in getting paid" is misguided.[15] (Motion at 13.) In particular, the Court finds that the cases Plaintiff relies upon for this contention—namely, *Moreno* and *Welch*—do not stand for this proposition. In *Moreno*, the court stated that district courts may not apply a "de facto policy" of applying a certain fixed rate across the board to all "civil rights cases." *Moreno*, 534 F.3d at 1115. In particular, the court held that district courts must "award fees that reflect economic conditions in the district," rather than "hold the line" at any particular rate. *Id.* However, the court in *Moreno* did not hold that district courts *must* apply current rates retrospectively to work done in

11. (*See* Motion at 19 (citing *Day v. SBC Disability Income Plan*, No. C 06–1740 JW (RS), 2008 WL 2783482 (N.D.Cal. July 17, 2008).) In *Day*, then-Magistrate Judge Seeborg determined that "a reasonable market rate" for Plaintiff's counsel's time, as of 2008, was $450 per hour. *Day*, 2008 WL 2783482, at *2.)

12. Plaintiff's counsel has submitted timesheets showing that he compiled 681.06 billable hours in litigation of this matter before this Court, of which only 4.53 hours were billed for work done after October 25, 2010. (*See* Nichols Law Group, Pre-bill Worksheet, hereafter, "Worksheet," Docket Item No. 172–2.)

13. (*See, e.g.*, Declaration of Gary Nawa ¶ 5, Docket Item No. 172–4 (stating, in a declaration signed in 2008, that another ERISA attorney in this area charges $450 per hour for "ERISA litigation matters"); Declaration of Glenn R. Kantor in Support of Plaintiff's Motion for an Award of Attorney's Fees ¶¶ 6, 8, Docket Item No. 172–4 (stating, in a declaration signed in 2011, that another ERISA attorney in the Los Angeles area charged $500 per hour until January. 1, 2009, when his firm raised its hourly rate for partners to $550 per hour).)

14. Further, considerations of the skill of Plaintiff's counsel, the difficulty of litigating this case, and the results obtained by Plaintiff's counsel—as discussed below—lead the Court to conclude that a rate of $450 per hour, rather than a higher rate, is appropriate. *See Moreno*, 534 F.3d at 1114.

15. Although Plaintiff refers to her "delay in getting paid," her contention in this regard appears to refer solely to the fact that her counsel has been working on this case for several years, and not to any affirmative conduct on the part of Defendants. (*See* Motion at 13 (contending that "[c]urrent interest rates are too low to compensate for the onerous delay of a 3 year case").)

previous years. Likewise, in *Welch*, the court did not hold that it is *mandatory* for district courts to apply current market rates in calculating attorney fees in cases such as this one. Rather, the court held that it was *permissible* for a district court to consider "delay in payment" in "arriving at a reasonable hourly rate," and stated that "[d]istrict courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement." *Welch*, 480 F.3d at 947. Here, the Court finds that in setting the reasonable hourly rate for Plaintiff's counsel at $450 per hour, the Court is awarding a fee that "reflect[s] economic conditions in [this] district" during the time period at issue in this case. *Moreno*, 534 F.3d at 1115.

Accordingly, the Court finds that a reasonable hourly rate for Plaintiff's counsel during the time period at issue in this case is $450 per hour.[16]

### b. Number of Hours

At issue is the correct number of hours for which Plaintiff's counsel should be compensated.[17]

■■■■ A plaintiff may only be compensated for those hours of work that were "reasonably expended." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. The court will not grant a fee award for "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933. The district court must base its determination whether to award fees on its judgment as to whether "the work product ... was both useful and of a type ordinarily necessary to advance the ... litigation." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir.2003) (citations omitted). Work that is "clerical in nature ... should [be] subsumed in firm overhead rather than billed at paralegal [or attorney] rates." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). "When clerical tasks [18] are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Id.* (citations omitted). Where "the district court cannot tell by a cursory examination which hours are unnecessarily duplicative ... the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno*, 534 F.3d at 1112.

■■■■ District courts are entitled to considerable deference in determining which hours are "unnecessary." *See Welch*, 480 F.3d at 949. "In the absence of contemporaneous time records, the court in its discretion may deny an award of attorney's fees." *Ackerman v. W. Elec. Co., Inc.*, 643 F.Supp. 836, 863 (N.D.Cal. 1986) (citations omitted). However, such a denial is not mandatory, insofar as the Ninth Circuit "requires only that the affi-

---

16. Plaintiff further requests that the Court make a "specific finding that the market rate [for attorneys similarly situated to Plaintiff's counsel] is $600, despite [her] request for [a rate of] $550." (Motion at 19.) However, the Court declines to enter such a "finding" in the abstract.

17. As a preliminary matter, the Court observes that it considers only those hours that are disputed by Defendants, while awarding Plaintiff all undisputed hours and denying without analysis all hours that have been withdrawn by Plaintiff. *See, e.g., Moreno*, 534 F.3d at 1116 (explaining that a district court should "normally grant" a fee request unless "opposing counsel can[ ] come up with specific reasons for reducing the fee request").

18. "Clerical tasks" include filing, document organization and copying. *See, e.g., Nadarajah*, 569 F.3d at 921; *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1101–02 (N.D.Cal.2008).

davits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award." *Id.* (citations omitted). A district court may "reduce hours that are billed in block format," so long as it explains "how or why" the reduction is fair.[19] *Welch,* 480 F.3d at 948.

■■■■■ The "extent of a plaintiff's success is a crucial factor in determining the proper amount of an award" of attorney fees. *Hensley,* 461 U.S. at 440, 103 S.Ct. 1933. If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court "should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* A district court considering a motion for attorney fees under ERISA "should apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984).

### i. Clerical Work

■■■ At issue is whether the Court should award Plaintiff's counsel compensation for 5.3 hours spent completing clerical tasks.

Defendants contend that Plaintiff's counsel is not entitled to attorney fees for clerical work. (Opp'n at 4–5.) In particular, Defendants point to a number of entries in Plaintiff's counsel's timesheets that involve electronic court filings and copying.

(*Id.*) Plaintiff's counsel contends that the entries at issue do not describe clerical work.[20]

In reviewing Plaintiff's counsel's timesheets, the Court has identified twenty-four entries that involve filing or retrieving electronic court documents or copying.[21] The Court finds that these entries describe clerical tasks. *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1543 (9th Cir.1992). Therefore, the Court finds that Plaintiff's counsel is not entitled to bill for these hours. *Nadarajah,* 569 F.3d at 921.

Accordingly, the Court finds good cause to reduce Plaintiff's counsel's requested time by 5.3 hours.

### ii. Joint Case Management Statement

■■■ At issue is whether the Court should award Plaintiff's counsel compensation for time which he contends was spent preparing a Joint Case Management Statement.[22]

Defendants contend that Plaintiff's counsel spent an excessive amount of time preparing the Joint Case Management Statement, inasmuch as this is a "routine filing." (Opp'n at 4.) In response, Plaintiff's counsel contends that this was "not an ordinary" Case Management Statement, insofar as, *inter alia,* "[c]omplex factual history and legal issues were condensed into 3 pages each." (Reply at 5–6.) Thus, Plaintiff's counsel contends that he reasonably spent 65.55 hours on the Joint Case Management Statement and related tasks, including 20 hours drafting the Joint Case Management Statement. (*Id.*)

19. "Block billing" is a "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch,* 480 F.3d at 945 n. 2.

20. (Plaintiff Jones's Reply to Defendants' Opposition to Her First Motion for Attorneys'

Fees at 6, hereafter, "Reply," Docket Item No. 182.)

21. (*See* Opp'n at 4–5 (pointing to specific time entries which consist of clerical tasks).)

22. (Docket Item No. 26.)

Here, the Court finds that 20 hours is excessive for drafting a Joint Case Management Statement. Thus, the Court exercises its discretion and applies a 10% reduction to the 20 hours Plaintiff's counsel spent drafting the Joint Case Management Statement. *Moreno,* 534 F.3d at 1116.

Accordingly, the Court finds good cause to reduce Plaintiff's counsel's requested time by 2 hours.

### iii. Plaintiff's Motion for Summary Judgment and Oppositions to Defendants' Motion for Summary Judgment

■■■ At issue is whether the Court should award Plaintiff's counsel compensation for the 250.4 hours he contends were spent on Plaintiff's Motion for Summary Judgment and two Oppositions to Defendants' Motion for Summary Judgment.

Defendants calculate that Plaintiff's counsel spent 210.3 hours on Plaintiff's Motion for Summary Judgment and 40.1 hours on Oppositions to Defendants' Motion for Summary Judgment, which Defendants contend was "grossly excessive." (Opp'n at 7–9.) Plaintiff's counsel responds that his time is well-documented and that it was reasonable, given the complexity of the issues. (Reply at 8–9.) However, in his Reply, Plaintiff's counsel neither contests Defendants' time calculations nor offers his own time calculations with regard to these briefs. (*Id.*)

Here, the Court finds that the hours claimed by Plaintiff's counsel were excessive. In particular, as the Court observed in its July 8 Order addressing these motions, Plaintiff "filed four briefs in support of her motion [for summary judgment], totaling ninety pages of text," even though

the Civil Local Rules provide that a notice of motion and supporting papers must be filed "in one document not exceeding 25 pages in length." (July 8 Order at 4 n. 4.) Further, the Court observed that Plaintiff "filed two separate Opposition briefs, totaling 46 pages in length," even though the Civil Local Rules provide that an opposition brief "may not exceed 25 pages of text." (*Id.*) The Court explained that Plaintiff had "offered no explanation for the excessive briefing, and did not seek leave from the Court to expand the allowable page limit." (*Id.*) Finally, the Court stated that "[t]hrough his voluminous filings, [Plaintiff's counsel] has demonstrated a complete disregard for the Civil Local Rules of this Court." (*Id.*)

Accordingly, the Court finds it appropriate to reduce the number of hours claimed by Plaintiff's counsel, inasmuch as the Court has already found that the briefing produced by Plaintiff's counsel with regard to these motions was "excessive." (July 8 Order at 4 n. 4.) To arrive at a figure for the correct number of hours Plaintiff's counsel is entitled to claim for these motions, the Court divides the number of pages Plaintiff was allowed for these briefs by the number of pages Plaintiff submitted, and multiplies that figure by the number of hours claimed by Plaintiff's counsel for work on these briefs.[23]

Here, as discussed above, under the Local Rules Plaintiff was allowed twenty-five pages for her Motion for Summary Judgment. However, she submitted a total of ninety pages of briefing, for which Plaintiff's counsel claims 210.3 hours. Therefore, applying the formula discussed above, the Court finds that the correct number of hours to which Plaintiff's counsel is entitled for this Motion is 58.42 hours.[24] Ac-

---

**23.** In other words, the Court adopts the following formula: (Hours Claimed) × (Pages Allowed) / (Pages Submitted) = (Correct Number of Hours).

**24.** I.e., 210.3 hours × 25/90.

cordingly, the Court reduces Plaintiff's counsel's requested time by 151.88 hours.

Further, as discussed above, Plaintiff was allowed twenty-five pages for her Opposition to Defendants' Motion for Summary Judgment. However, she submitted forty-six pages, for which Plaintiff's counsel claims 40.1 hours. Therefore, applying the formula discussed above, the Court finds that the correct number of hours to which Plaintiff's counsel is entitled for these Oppositions is 21.79 hours.[25] Accordingly, the Court reduces Plaintiff's counsel's requested time by 18.31 hours.

In sum, for the reasons discussed above, the Court finds good cause to reduce Plaintiff's counsel's requested time for these motions by 170.19 hours.

### iv. Plaintiff's CMC Response

■ At issue is whether the Court should award Plaintiff's counsel compensation for 44.88 hours which he contends were spent producing a response to Defendants' request for a further Case Management Conference ("CMC Response").[26]

Defendants contend that Plaintiff's CMC Response was unnecessary. (Opp'n at 6.) Further, Defendants calculate that Plaintiff's counsel spent 44.88 hours preparing the CMC Response. (Id.) Plaintiff's counsel responds that he spent 62.39 billable hours on this case in the days between the filing of Defendants' request for a further Case Management Conference on September 10, 2009 and the filing of the CMC Response on September 22, 2009. (Reply at 8.) Further, Plaintiff's counsel contends that the time was reasonable because he needed to ensure that the Court was aware of additional issues, insofar as "the Court sometimes issues case management orders based on the parties' statements and vacates the conference." (Id. at 7–8.)

Here, in its Order addressing Defendants' request for a Case Management Conference and Plaintiff's CMC Response, the Court explained that it had granted Defendants' request. (See Docket Item No. 40 at 1.) However, the Court also explained that the parties' "submissions" in relation to Defendants' request for a Case Management Conference, including the parties' respective Case Management Statements, raised legal issues that were not "amenable to resolution in a Case Management Conference," but instead needed to be "brought properly before the Court by filing motions." (Id.) The Court observed that "the parties' [Case Management] Statements," and "in particular Plaintiff's Statement[,] which was twenty-four pages long," contained "substantial legal argument which was more appropriate for a brief than a Case Management Statement." (Id. at 1 n. 1.)

Thus, in light of the Court's previous findings regarding this briefing, the Court finds that the hours claimed by Plaintiff's counsel in this regard are excessive. In particular, the Court finds that at least 50% of the hours claimed by Plaintiff's counsel were unnecessary. Therefore, the Court finds good cause to reduce Plaintiff's counsel's hours for Plaintiff's CMC Response from 44.88 hours to 22.44 hours.

Accordingly, the Court reduces Plaintiff's counsel's requested time for the CMC Response by 22.44 hours.

### v. Plaintiff's Second Case Management Statement

■ At issue is whether the Court should award Plaintiff's counsel compensation for time which he spent preparing a Second Case Management Statement that was never filed.

---

**25.** I.e., 40.1 hours × 25/46.

**26.** (Docket Item Nos. 35, 36.)

Defendants contend that Plaintiff's counsel unnecessarily billed time, in the amount of 9.05 hours, for a Second Case Management Statement that was never filed. (Opp'n at 7.) Plaintiff's counsel contends the time at issue was spent working on other necessary matters, rather than a Second Case Management Statement. (Reply at 8.) However, the Court finds that Plaintiff's counsel's timesheets do not support this contention. After examining Plaintiff's counsel's timesheets, the Court finds that Plaintiff's counsel billed 4.33 hours from October 20, 2009 to October 22, 2009 working on a Second Case Management Statement that was never filed.[27]

Accordingly, the Court reduces Plaintiff's counsel's requested time for the unfiled Second Case Management Statement by 4.33 hours.

### vi. Plaintiff's Reply Brief and Use of Extra–Record Evidence

■ At issue is whether the Court should award Plaintiff's counsel compensation for 20.40 hours which he spent preparing: (1) a reply brief to her Motion for Summary Judgment, and (2) a response to Defendants' evidentiary objections over Plaintiff's use of extra-record evidence.[28]

Defendants contend Plaintiff spent an excessive amount of time on her reply brief and her response to their Objections to certain "evidence offered in support of [Plaintiff's] motion for summary judgment."[29] (Opp'n at 9.) Defendants contend, without supporting documentation, that ten hours would be a reasonable amount of time for the work done by Plaintiff's counsel on the reply brief. (*Id.*) Further, Defendants contend that the time spent by Plaintiff's counsel responding to their Objections should not be compensated whatsoever, insofar as the "extra-record evidence" to which Defendants objected "included [Plaintiff's counsel's] reference to alleged discussions during Court-supervised mediation." (*Id.*) Because Defendants do not differentiate which hours were spent on each task, the Court is compelled to consider them as a whole.

Upon review, the Court does not find good cause to reduce the number of hours claimed by Plaintiff's counsel with regard to these two tasks. First, as to the reply brief, the Court finds that it is the type of work product which is "useful" and "of a type ordinarily necessary to advance" the litigation, which means that it is appropriate for the Court to award fees for it. *Armstrong*, 318 F.3d at 971. Second, as to the response to Defendants' Objections, the Court finds that Defendants' contentions center on the suitability of Plaintiff's counsel receiving fees for work arising out of his violation of the ADR Local Rules. However, the Court will address that issue separately below.

Accordingly, the Court does not find good cause to reduce the 20.40 hours used by Plaintiff's counsel to prepare a reply brief and respond to Defendants' Objections.

### vii. ADR Confidentiality Violations

■ At issue is whether the Court should award Plaintiff's counsel compensa-

---

**27.** (*See* Worksheet at 60–64 (billing, e.g., 1.21 hours on October 21, 2009 for "draft/revise add to and revise 2d supp CMS").)

**28.** (*See* Defendants' Objections to Plaintiff's Evidence Offered in Support of Plaintiff's Motions, hereafter, "Objections," Docket Item No. 82.)

**29.** (*See* Objections at 1 (contending that Plaintiff submitted "her own declaration," the "declarations of her husband ... and her counsel ... and numerous documents which are not a part of the administrative record" in this case in support of her Motion for Summary Judgment, and further contending that all of these pieces of evidence are "improper extra-record evidence that is wholly irrelevant").)

tion for the 42.65 hours he spent litigating Defendants' Motion to Strike.

Defendants contend that Plaintiff should not be awarded any fees for responding to motions that were "necessary only because of her counsel's repeated violations of the confidentiality rules that apply to settlement negotiations generally, and ADR proceedings specifically." (Opp'n at 10.) Plaintiff responds that the time spent opposing the Motion to Strike should be compensated, because that work was "intimately intertwined" with other motions brought by Plaintiff. (Reply at 10.)

Upon review, the Court finds that Plaintiff is not entitled to any fees for time spent litigating Defendants' Motion to Strike. As discussed above, Judge Ryu granted Defendants' Motion to Strike in her October 15 Order, in which she found that Plaintiff's counsel "knowingly and repeatedly disclosed mediation communications and Defendants' mediation brief in numerous court filings," even though he had signed a confidentiality agreement preventing him from doing so. (October 15 Order at 16.) Further, as discussed above, Judge Ryu found that these disclosures were violations of Plaintiff's counsel's "professional duty to be aware of and refrain from violating this Court's Local Rules, especially one as fundamental to the integrity and administration of the judicial system as the confidentiality of court-sponsored mediation discussions." (*Id.* at 21.) By definition, hours that were spent litigating a motion that was filed in response to "knowing" and "repeated" violations of Plaintiff's counsel's "professional duty" cannot be hours that were "reasonably expended." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Accordingly, the Court finds that these hours must be excluded from the fee calculation. *Id.*

Accordingly, the Court finds that Plaintiff's counsel may not be compensated for the 42.65 hours spent opposing Defendants' Motion to Strike.

### viii. Block Billed Entry

At issue is whether the Court should award Plaintiff's counsel compensation for a 20–hour entry made on January 3, 2009 to record time that he spent on the case during the preceding month.

Defendants contend that the following entry should be stricken, insofar as it is not accurate and was not recorded contemporaneously:

> 1/3/2009 Robert B NIchols [sic] [$]550.00 20.00[hours] [$]11,000.76 Billable 462 Draft/revise
>
> Draft/revise in month prior to 1/3/08 [sic], draft, research, and analyze 30 page appeal argument letter, including summaries of all doctors [sic] reports, cases on issues, and arguments. Time estimated[.] [30]

Plaintiff responds that the date referenced is the date of submission for an administrative appeal letter, "which was used as the beginning draft for [Plaintiff's] mediation brief," and offers an explanation of the page length, word count, and quantity of case citations in the letter and brief, as well as the content of the law he analyzed in both. (Reply at 13–14.)

Upon review, the Court finds this is a block-billed entry. Accordingly, the Court exercises its discretion to reduce the number of hours for such an entry by 20 percent. *Welch,* 480 F.3d at 948. Therefore, the Court finds that this entry should be reduced by 20 percent of twenty hours, i.e., four hours. Accordingly, the Court

**30.** (Opp'n at 11 (citing Worksheet at 6).)

reduces Plaintiff's counsel's requested time by 4 hours.[31]

Finally, in his Reply, Plaintiff's counsel has voluntarily withdrawn his request for a total of 7.1 hours. (Reply at 13–15.) Accordingly, the Court reduces Plaintiff's counsel's requested hours by 7.1 hours.

In sum, the Court finds that Plaintiff's counsel's compensation should be reduced by 255.97 hours. Thus, Plaintiff's counsel is entitled to an award for the remaining 425.09 hours of work.

### 2. Ninth Circuit Fees

At issue is whether Plaintiff's counsel should be awarded attorney fees for his work on appeal in this case.

■■■■■ As discussed above, in an ERISA action a party claiming fees must show "some degree of success on the merits" before a court may award attorney fees. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120 (9th Cir.2010) (quoting *Hardt*, 130 S.Ct. at 2158–59). A claimant "does not satisfy that requirement by achieving a trivial success on the merits or a purely procedural victory." *Id.* (internal quotations and citation omitted). "Only after passing through the 'some degree of success on the merits' door is a claimant entitled to the district court's discretionary grant of fees." *Id.* After determining whether a litigant has achieved some degree of success on the merits, district courts must proceed to

"consider the *Hummell*[32] factors before exercising their discretion to award fees" in ERISA cases. *Id.* A "procedural victory that may be a way station to utter substantive defeat creates no right to fees." *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir.1990).

■■■ As a threshold matter, the parties dispute whether Plaintiff achieved "some degree of success on the merits" at the appellate level. Plaintiff contends that she achieved some degree of success on appeal, on the grounds that she obtained "remand to the Claims Administrator of the remaining disability income benefit issue" and "remand to [this Court] on the [attorney fee] issue."[33] Defendants respond that Plaintiff is not eligible for an award of attorney fees on appeal, because "the only significant relief she obtained on appeal was procedural," namely, the Ninth Circuit's finding that this Court "misapplied Federal Rule of Civil Procedure 54(d)[ ] by denying potential fees prior to the expiration of a period in which a fee motion could be filed."[34]

Upon review, the Court finds that Plaintiff has not shown a sufficient degree of success on the merits at the appellate level to permit an award of attorney fees. In its decision, the Ninth Circuit affirmed in part and vacated in part the Court's July 8 Order, and remanded the case to this Court with instructions. (October 28 Memorandum at 2.) In particular, the Ninth Circuit vacated two aspects of the

---

**31.** Defendants also contend that a number of other specific entries, totaling 11.25 hours, should be stricken on a variety of grounds, including, *inter alia*, that the entries are inaccurate, were not recorded contemporaneously, were block billed or are excessive. (Opp'n at 10–13.) The Court has reviewed Defendants' contentions regarding these hours, Plaintiff's responses, and the underlying documents, and does not find good cause to reduce these contested hours.

**32.** *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980).

**33.** (Application, Ex. 1, Appellant's Memo in Support of Motion for Attorney's Fees at 3–4, Docket Item No. 189–1.)

**34.** (Application, Ex. 4, Appellee's Opposition to Appellant's Application for Attorney's Fees at 1, Docket Item No. 189–4.)

Court's July 8 Order. First, the Ninth Circuit found that the Court had erred by "dismissing Plaintiff's claim concerning the amount of long-term disability benefits," and held that this claim should be remanded to the Plan Administrator. (*Id.* at 2–3.) Second, the Ninth Circuit found that the Court had erred by "requiring each party to bear its own fees before the 14–day time for filing a fee motion expired," pursuant to Fed.R.Civ.P. 54(d), and held that Plaintiff should be permitted to file a fee motion. (*Id.* at 3–4.) As to the first issue, the Court finds that Plaintiff, immediately following the Court's July 8 Order, submitted the issue of the amount of long-term disability benefits to the Plan Administrator prior to filing her appeal with the Ninth Circuit.[35] Thus, because Plaintiff elected to submit this issue to the Plan Administrator prior to filing her appeal with the Ninth Circuit, the Court finds that the Ninth Circuit's decision to remand this issue to the Plan Administrator is, at most, a "trivial success on the merits." *Simonia,* 608 F.3d at 1120. As to the second issue, the Court finds that the Ninth Circuit solely held that the Court had erred in its application of Fed.R.Civ.P. 54, which is a "purely procedural" victory that cannot constitute "success on the merits." *Id.* Thus, because Plaintiff has not shown that she achieved any success on the merits at the appellate level, she is not entitled to attorney fees. *Id.*

■ Plaintiff contends that: (1) she "obtained a reversal of [the Court's] denial of attorney[ ] fees" at the Ninth Circuit; and (2) her victory at the Ninth Circuit was not "procedural," because "[a] [p]laintiff's right to attorney fees in the District Court is a substantive right." (Ninth Circuit Reply at 1.) However, the Court finds that each of these contentions is misguided. As to the first contention, the Court finds that it misstates the language of the Ninth Circuit's decision. The Ninth Circuit did not "reverse" the Court's denial of attorney fees. Rather, as discussed above, it *vacated* the Court's denial of fees and permitted Plaintiff to file a fee motion, on the ground that the Court had erred by failing to grant Plaintiff sufficient time to file such a motion pursuant to Fed. R.Civ.P. 54(d). (October 28 Memorandum at 3–4.) As to the second contention, the Court finds that the Ninth Circuit's decision did not vindicate any of Plaintiff's substantive rights. Rather, the Ninth Circuit's decision was a "procedural victory" for Plaintiff, insofar as it provided solely that Plaintiff was entitled to file a fee motion pursuant to Fed.R.Civ.P. 54(d). In particular, it was a procedural victory that "may [have been] a way station to utter substantive defeat," [36] insofar as the Ninth

35. (*See* Defendants' Submission of Documents in Supporting [sic] Their Opposition to Plaintiff's Application for Attorney's Fees on Appeal, Ex. B, Declaration of Matthew Halford in Support of Appellees' Opposition to Appellant's Application for Atotrney's [sic] Fees, Ex. A, Letter from Susan Rene Jones (a letter dated July 18, 2010 from Plaintiff's counsel providing "formal notice" to the Plan Administrator of Plaintiff's decision to administratively appeal the amount of her long-term disability benefits with the Plan Administrator, and also stating that she "does not waive [her] right to appeal the issue to the Ninth Circuit").) Plaintiff concedes that she submitted this issue to the Plan Administrator prior

to filing her appeal with the Ninth Circuit. (*See* Application, Ex. 6, Appellant's Reply to Appellee's Opposition to Motion for Attorney's Fees at 4, hereafter, "Ninth Circuit Reply," Docket Item No. 189–6 (contending that Plaintiff "filed a protective appeal with the [Plan Administrator] on the offset issue because of the risk that the [Ninth Circuit] might rule against her on [that issue]").)

36. *Richardson,* 900 F.2d at 119; *see also id.* (offering, as an instance of a mere "procedural victory" that can create "no right to fees," the example of "appellate reversal of [a] grant of summary judgment," insofar as such a

Circuit did not state that Plaintiff was entitled to *receive* any fees, but only held that she had a procedural right to bring a fee motion. Because Plaintiff's victory was purely procedural, it "creates no right to fees." *Id.*

Accordingly, the Court DENIES Plaintiff's Application for Ninth Circuit Attorney Fees.

### D. *Conclusion*

The Court GRANTS in part and DENIES in part Plaintiff's Motion for Attorney Fees. The Court awards Plaintiff 425.09 hours at an rate of $450 per hour, for a total of $191,290.50.

The Court DENIES Plaintiff's Application for Ninth Circuit Attorney Fees.

Within thirty (30) days of this Order, Defendants shall send payment of fees as ordered by the Court to Plaintiff's counsel's designated address.

reversal "leaves the plaintiff still having to prove [her] case").